MUNICIPALITY OF MANATÍ, Plaintiff and Appellant, *v.* E. GARRIDO MORALES, COMMISSIONER OF HEALTH, and MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendants and Appellees.

No. 6962.   Argued January 14, 1937.—Decided January 19, 1937.

*Miguel Guerra Mondragón* for appellant.   *B. Fernández García, Attorney General,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This case involves the constitutionality of Act No. 56, directing the Treasurer of Puerto Rico on request of the Commissioner of Health and on warrant of the Insular Auditor, to withhold certain sums from the regular funds of the municipalities of Puerto Rico for delivery to the Commissioner of Health to aid in the maintenance of public health units established in those municipalities, and which may, in the future, be established in the municipalities, and for other purposes, approved on May 13, 1934.   (Laws, p. 404).

Through its Mayor, J. R. Dávila, the Municipality of Manatí filed a bill for injunction in the District Court of San Juan against the Commissioner of Health and the Treasurer of Puerto Rico, Garrido Morales and Domenech, respectively, alleging that the former proposed, at the request of the latter, to retain, and that the latter intended to retain

from the regular funds belonging to the plaintiff municipality, the sum of $1,500, annually, to be used in aiding to maintain a public health unit in that municipality, in the same form as other funds belonging to The People of Puerto Rico were used and disbursed. It was further alleged that such acts were intended to be done under color of the authority conferred upon the defendants by the above-mentioned Act No. 56 of 1934, which, being unconstitutional and void, did not confer such authority.

Upon the ground that it would suffer irreparable damages and grave injuries, and had no ordinary, rapid and adequate remedy, plaintiff prayed for a permanent injunction restricting the defendants from withholding the aforesaid funds, asking for a preliminary injunction pending final determination.

An order was issued to the defendants to show cause why the injunction prayed for should not be issued. The defendants appeared and moved that certain portions of the complaint be stricken out, filed a demurrer for failure to state facts sufficient to constitute a cause of action and answered the complaint on its merits. Both parties were heard at one hearing. By stipulation they agreed to file briefs. The defendants filed their brief. The plaintiff did nothing. On November 5, 1934, the court entered judgment dismissing the complaint, without special pronouncement of costs.

The municipality appealed. In its brief it maintains that the trial court erred "in deciding that the legislature of Puerto Rico had the power to approve Act No. 56 of May 13, 1934."

In argument, the appellant cites Chapter 10 of Title 48 of the United States Code, Section 1471, of which provides in part as follows:

"The legislatures of the Territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases, that is to say:

.    .    .    .    .    .    .    .    .    .    .

."Regulating county and township affairs.

.    .    .    .    .    .    .    .    .    .

"For the assessment and collection of taxes for Territorial, county, township, or road purposes.

.    .    .    .    .    .    .    .    .    .

"In all other cases where a general law can be made applicable, no special law shall be enacted in any of the Territories of the United States by the Territorial legislatures thereof."

If these were the only provisions of law to be considered, the appellant would perhaps be correct, but subsequent to this general law with respect to territories, Congress approved the Acts of 1900 and 1917 organizing the territory of Puerto Rico, and conferring upon its legislature the power necessary in our judgment to adopt the act which the appellant attacks.

In the case of *Ponce* v. *Roman Catholic Church,* 210 U. S. 296, the Supreme Court of the United States decided that: "The general prohibition in the Act of July 30, 1886, 24 Stat. 170, against territorial legislatures passing special laws does not apply where specific permission is granted by the organic act of a particular territory." See also 28 Op. Atty. Gen. 491.

Section 37 of the Organic Act provides that:

"Section 37.—That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities so far as may be necessary, and to provide and repeal laws and ordinances therefor; also the power to alter, amend, modify, or repeal any or all laws and ordinances of every character now in force in Porto Rico or municipality or district thereof in so far as such alteration, amendment, modification, or repeal may be consistent with the provisions of this Act."

The law here attacked provides that:

"Section 1.—The Treasurer of Puerto Rico is hereby authorized and directed to withhold, on request of the Commissioner of Health and on a warrant of the Insular Auditor, from the regular funds

corresponding to the municipalities of Adjuntas, Aguadilla, Aguas Buenas, Arecibo, Arroyo, Barceloneta, Bayamón, Cabo Rojo, Cayey, Guayama, Guaynabo, Hormigueros, Humacao, Juncos, Manatí, Maricao, Maunabo, Mayagüez, Moca, Naguabo, Patillas, Río Piedras, Salinas, San Germán, San Lorenzo, Santa Isabel, San Sebastián, Toa Baja, Utuado, Yabucoa, and Yauco, respectively, the following sums of money: $500, $500, $300, $2,800, $500, $300, $1,860, $1,000, $1,500, $1,000, $300, $300, $1,000, $800, $1,500, $500, $240, $5,000, $250, $500, $300 , $5,600, $3,500, $1,500, $300, $3,000, $500, $500, $360, $600, $1,000 every year, to aid in the maintenance of public health units established in the aforesaid municipalities. When said sums, or any of them, have been withheld and received, or placed at the disposition of the Commissioner of Health, the latter shall proceed to expend same to aid in the maintenance of said public health units, in the same manner as other funds of The People of Puerto Rico are expended. The Department of Health shall comply, at all times, with the conditions established precedent to the creation of a public health unit and when it is shown that they were agreed upon between the Department of Health and the respective municipality.

"Section 2.—The sums so withheld for the municipalities mentioned in the foregoing section shall be used solely and exclusively as a contribution of the respective municipality for the maintenance of its public health unit, and the Insular Government, through the Department of Health, shall continue contributing to the maintenance of said public health units in the same manner and with the same amounts as it has done up to the present time.

"Section 3.—Any municipality which shall hereafter wish to be included in the group of municipalities with right to maintain a public health unit, by virtue of a contribution from its regular funds for the said purpose, may so declare by means of an ordinance to that effect, a certified copy of which shall be sent to the Treasurer and to the Auditor of Puerto Rico, and said ordinance shall constitute express and irrevocable authorization for the said Treasurer and Auditor of Puerto Rico to proceed with the retention of the sums which the said municipalities may promise from their regular funds, and the Commissioner of Health is hereby authorized to dispose of, and to expend, said funds in the same manner and for the same purpose for which funds have been retained from the municipalities specifically mentioned in the foregoing sections of this Act

"Section 4.—Upon receipt of the amounts corresponding to each municipality, or placed at the disposal of the Commissioner of Health

the latter shall proceed to expend the same to aid in the mainten-
ance of said public health units, in the same manner as other funds
of The People of Puerto Rico are expended and disbursed.''

The powers conferred by Congress upon the Legislature
of Puerto Rico with respect to municipalities were from the
beginning so broad that the general jurisprudence upon the
matter has been consistently applied to decide all questions
raised. In general terms, the relation in this Island between
the municipalities and the territory is the same as that exis-
tent in the various states of the Union between their mun-
icipalities and the state. The Supreme Court of the United
States has decided that:

"A municipality is merely a department of the State, and the
State may withhold, grant or withdraw powers and privileges as it
sees fit. However great or small its sphere of action, it remains the
creature of the State exercising and holding powers and privileges
subject to the sovereign will. See *Barnes* v. *District of Columbia,*
91 U. S. 540, 544, 545.'' *Trenton* v. *New Jersey,* 262 U. S. 182, 187.

Under the title "Legislative Control of Municipal Cor-
porations", Ruling Case Law summarizes the decisions in
a great number of cases upon the point. It says in part:

"Over the property which a municipal corporation has acquired
in its public or governmental capacity, and devoted to public or gov-
ernmental uses, the power of the legislature is indeed complete, so
that the legislature may take the control of such property from the
officers of the corporation and turn it over to other officers under
the more direct supervision and control of the state; or it may,
without compensation to the municipality and without its consent,
direct that such property be devoted by the corporation to some other
public use, or turned over to some other governmental agency for
some other public purpose; or it may require the municipality to
expend its funds for the acquisition and maintenance of such prop-
erty; or it may provide whatever regulations for the use and man-
agement thereof it may deem to be for the public interest.''

It is proper to add that although the law here attacked
refers to specific municipalities, it provides the procedure to
be followed by any other municipality desirous of being

included in the group with right to maintain public health units. It does not then involve an exclusively local act. Moreover, sight should not be lost of the fact that public health is a function of the legislature and that as the act is drafted, not one cent of municipal funds therein provided for are to be spent outside of the territorial limits of the municipality or for any purpose other than the maintenance of a public health unit in the municipality itself.

In the case of *Davorck* v. *Moore*, 105 Mich. 120, cited, in 19 R.C.L. 765, it was held that:

"The preservation of the public health is a public and governmental function, and a statute providing for the appointment of the board of health of a city by the governor of the state, and requiring the city to turn over to such board its hospitals and all the other property of its health department and to raise such funds as the board shall determine are necessary for its use, is constitutional."

The appeal should therefore be dismissed and the judgment appealed from affirmed.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.